## Stephen Griggs v. The Detroit and Milwaukee Railway Company and others.

Where the parties in interest to a decree in Chancery remain unchanged, and no new rights have arisen, a defendant interested in having the decree executed, should proceed by petition for that purpose. But when a third person has acquired an interest in the decree, a bill is necessary to bring him before the Court, that his rights may be passed upon by the Court as in other cases.

The only effect of non-resident defendants appearing and answering after decree, under the statute, is to vacate the decree as to them, leaving it to stand as against other defendants.

Where non-resident defendants appeared and answered after decree, and after a bill had been filed to execute the same, and no subsequent steps were taken in the original suit. it was *held*, that if these defendants wished to avail themselves of the right they had acquired by so appearing and answering, they should make their defense by answer to the supplemental bill.

An appellant in Chancery can not complain of errors not affecting his interests.

One of the defendants in a foreclosure decree who had a residuary interest in the mortgage foreclosed after complainant's demand should be satisfied, filed a bill, the object of which was to have the benefit of that decree, and also to foreclose the mortgage against the defendants who were not, but should have been, parties to the first suit. *Held* not objectionable. Such a bill is an original bill as to those who were not parties to the first bill, and a supplemental bill as to those who were.

GRIGGS *v.* THE DETROIT AND MILWAUKEE RAILWAY CO.

It is no objection to the decree in such a case that it is in the ordinary form of foreclosure decrees—it appearing that payments have become due on the mortgage since the decree in the original suit, as well as on complainant's debt which the mortgage was assigned to secure.

One who receives a conveyance of lands with covenant against incumbrances, and gives back a mortgage for the purchase price, can not, in a suit to foreclose his mortgage, set off the amount of prior incumbrances which he has neither paid nor shows that he has been or is in danger of being damnified by.

He does not show that he is damnified by setting up the foreclosure in Chancery of an incumbrance, and the sale of the mortgaged premises, but without alleging that he was a party to the suit or in any way bound thereby.

Where a mortgage was given by a railway company to trustees for the bond holders, and these trustees purchased on the foreclosure of a prior mortgage a parcel of land which had been conveyed to the company, and the purchase was made by them in their own right, and not as trustees, it was *held*, that the purchase could not be treated as a payment of the mortgage by them as trustee mortgagees, so as to entitle the amount to be set off against a mortgage given by the railway company for the purchase price of the land.

*Heard July 11th, 1861. Decided April 29th.*

Appeal in Chancery from Wayne Circuit. The case is fully stated in the opinion.

*D. C. Holbrook*, for complainant:

A bill to have the decree executed was proper: — *Welf. Eq. Pl* 249; *Cooper Eq. Pl.* 98; *Story Eq. Pl.* 429.

But if the Court should think the decree should not be enforced, then Griggs is entitled to a foreclosure, since no valid defense is set up in the answer.

Incumbrances or defective titles constitute no defense to a mortgage for the purchase money, unless the purchaser has been ousted, or has paid the incumbrances:— 26 *Wend.* 109; 25 *Wend.* 113; 3 *Edw. Ch.* 124; 2 *Wheat.* 13; 2 *McLean*, 464; 17 *Wend.* 188; 8 *S. & M.* 727; 3 *Sandf. S. C.* 118; 2 *Barb. Ch.* 594.

The pretended incumbrances are not alleged in the answer to have been recorded prior to the purchase of Firby; and by the pleadings, these incumbrances therefore are not shown to be valid prior liens.

*A. Pond*, for defendants:

The decree which the bill sets forth, was a bar to this bill as an *original bill* for the foreclosure of the mortgage:

2 *Daniels Ch. Pr.* 753 *et seq.*; *Mit. Eq. Pl.* 248; *Cooper Eq. Pl.* 273; *Story Eq. Pl.* §§ 736, 738, 740; 3 *Paige,* 509; 5 *Wis.* 151. That decree being in part in favor of the complainant here, his proper course was to apply by petition and obtain leave to carry it into execution, if the complainants in the case neglected and refused to do so, as he alleges: — 2 *Dan. Ch. Pr.* 1348 *et. seq.*; *Story Eq. Pl.* § 740; 7 *Hare,* 331; 11 *Paige,* 147. And if it was defective for want of necessary parties, having obtained leave to carry it into execution he should have filed a supplemental bill to perfect it: — 17 *E. L. & E.* 265; *S. C.,* 19 *E. L. & E.* 244.

Waiving all questions as to the form of this decree, it can not be sustained as substantially a decree for the execution of said prior decree, under the prayer in that behalf in the bill: Because said prior decree at the time this decree was rendered did not exist. It had been regularly opened, under the statute : — *Comp. L.* § 3543 ; *Wal. Ch.* 305.

If it be held that the bill is sustainable as an original bill for the foreclosure of the mortgage, then of course the whole case is open, and defendants are entitled to set up any defense that may exist to such foreclosure. And the outstanding prior incumbrances upon the premises shown by the answer and stipulation should be deducted from the amount due upon the mortgage: — 3 *P. Wms.* 306; 1 *S. & R.* 437; 2 *Johns. Ch.* 546; 1 *Green Ch.* 407; 1 *Green Ch.* 467; 1 *Rand.* 72; 7 *Ind.* 533; 7 *Gratt.* 399.

The case of *Abbott v. Allen,* 2 *Johns. Ch.* 522, and analagous cases based upon it, are clearly distinguishable from this case. They hold only that a "mere defect' of title" is no defense to an action for the purchase money. In *Abbott v. Allen,* the Chancellor says he expresses no opinion as to "whether or not the injunction ought to stand if there had been a previous eviction, or if *there was an existing incumbrance which appeared to admit of no dispute,*" which is the case here. What his *opinion* was,

upon this point, is shown by the case of *Johnson v. Gere,* 2 *Johns. Ch.* 546. See also 1 *Green Ch.* 412.

MANNING J.:

· In 1854, Thomas Firby sold to the Detroit and Pontiac Railroad Company, now the Detroit and Milwaukee Railway Company, three lots situate in the city of Detroit, numbered 11, 12 and 13, and conveyed the same to the company by a warranty deed, with a covenant against incumbrances, and took back a mortgage on the same premises for $16,000, a part of the purchase money. Firby assigned the mortgage to C. & A. Ives. The assignment was absolute on its face, but was given as security for a debt that Firby was owing them. Firby afterwards assigned the same mortgage to complainant Griggs, to secure a debt he was owing Griggs. The Iveses filed a bill against the Railway Company to foreclose the mortgage, making John M. Forbes, John W. Brooks and complainant, parties defendants as subsequent purchasers or incumbrancers. The subpœna was personally served on the Railway Company and on Griggs. Forbes and Brooks being non-resident defendants, and not appearing, the bill was taken as confessed against them under the statute. It was also taken as confessed by the Railway Company. Griggs appeared and answered, stating, among other things, that the assignment to the Iveses was intended as security only for what Firby was owing them, and the subsequent assignment to himself to secure what Firby was owing him. On February 8th, 1858, a decree was entered, stating the amount due on the mortgage from the Railway Company (for the whole of the mortgage debt was not then due), and directing the payment of the debt Firby was owing the Iveses, amounting to $6,308,01, and the payment of $3,289,33 to Griggs, that being the amount then due on what Firby was owing him. ·

The bill in the present case is filed by Griggs against

all of the parties to the former bill, and against the following persons who were not parties to that bill, viz: Thomas Firby, Erastus Corning, Frederick C. Gebbard, George F. Porter, Charles J. Brydges, Thomas Reynolds, Henry C. R. Beecher, John Owen, James V. Campbell, Jared C. Warner and Matilda Firby.   After setting forth the several facts already mentioned, the bill states, on information and belief, that the Railway Company had made some kind of mortgages or other conveyances of the premises to Brydges, Reynolds and Beecher, as trustees for parties unknown to complainant; that they had purchased of the Iveses the aforesaid mortgage and decree; that they claimed to be the owners thereof and to control the decree; and that they refused to execute the decree by a sale of the mortgaged premises.   The other defendants, who were not parties to the first bill, are stated as having, or claiming to have, some right or interest in the mortgaged premises, as subsequent purchasers, incumbrancers or otherwise.   And the bill concludes with a prayer for an execution of the Ives decree, or a foreclosure of the mortgage on which that decree was entered, and the general prayer for other or further relief.

The Railway Company, Brydges, Reynolds, Beecher, Owen, Campbell and Porter, put in an answer admitting all the statements in the bill except the purchase of the Ives decree, which it states was purchased by Brydges and Reynolds in their individual capacity and not as trustees, and that Beecher was not a party to the purchase. It also states that on the 9th of November, 1859, Forbes and Brooks, under the statute providing for such cases, filed a petition in the Ives foreclosure suit for leave to answer the bill in that cause; that leave was granted, and that they thereupon filed an answer, and that no further proceedings had been had in that cause.   The answer also states that lots 11 and 12 were incumbered by a mortgage, given by William Gooding, when he was owner of

10 MICH.—I.

the lots, to Aretus Wilder, dated September 27th, 1850, for $4,000 and interest. And that lot 13 was also incumbered by a mortgage given by Firby and wife and Thomas Wood and wife, when they owned the lot together, to Joseph Penny, on the 27th May, 1852, for $2,500 and interest; that the Wilder mortgage, so far as appeared of record, had not been paid or discharged, in whole or in part: that the Penny mortgage had been foreclosed by the mortgagee against the mortgagor, and lot 13 sold under the decree on the 8th July, 1858, to D. Bethune Duffield, for $1,554,85. These mortgages the answer insists should be deducted from the mortgage given by the Railroad Company.

Firby and wife and the Iveses also answered, but as no question arises on either of their answers, it is not necessary to notice them further.

The bill was taken as confessed by Forbes, Brooks, Corning, Gebhard and Warner.

A decree having been entered for complainant, the Railway Company, Brydges, Reynolds, Beecher, Owen, Campbell and Porter, appeal to this Court, and ask a reversal or modification of the decree.

1. A reversal of the decree. This is asked on the ground that the bill can not be sustained as an original bill for the foreclosure of the mortgage, as the bill previously filed by the Iveses and the decree in that suit are a bar to a second bill for the same purpose by a party to that suit. Nor as a bill to execute the decree in the Ives suit— complainants remedy in that case being by petition and not by bill.

As to this last objection, if the parties to both suits were the same, and nothing had transpired since the Ives decree rendering another bill necessary, there would be some force in the objection, on the score of costs. But whether in such a case it would or should go further than staying proceedings on the second bill when the objection is taken

at an early stage of the cause, with leave for complainant to proceed by petition; or, when not so made, to a denial of costs to complainant on the final hearing, may well be questioned. It is not however our intention to decide this point, as the assignment of the mortgage and decree to Brydges and Reynolds, of itself, made a case for a bill to carry the decree into execution: — *Cooper's Equity*, 99. Where the parties in interest remain the same, and no new rights have arisen, a petition would seem to answer every purpose, and should be adopted, as it is more expeditious and less expensive than a bill. But when a third person has acquired an interest in the decree, a bill is necessary to bring him before the Court, that his rights may be passed upon by the Court, as in other cases.

Failing on this point, it is next said by the appellants that the decree was vacated by the appearance and answer of Forbes and Brooks, under the statute relative to non-resident defendants. It was vacated as to them, but left in *statu quo* against the other defendants. The only effect of the order permitting them to appear and answer was to vacate the decree as to them. The statute neither gives nor was intended to give a re-hearing to parties regularly before the Court, and who had been or might have been heard, and whose rights had been passed upon by the decree.

Forbes and Brooks appeared and put in their answer to the Ives bill after the present bill, which has been taken as confessed by them, was filed. And if they wished to avail themselves of the right they had thereby acquired, they should have appeared and set up their defense by answer to the present bill. This they have not done, but, as already stated, permitted the bill to be taken against them as confessed. Neither have they appealed; and if there was error as to them in the complainant's mode of proceeding—which we do not think is the case—the appellants can not be heard to make the objection, as they are

in no way affected by it: — *Warner v. Whittaker*, 6. *Mich.* 133.

The object of the bill is to have the benefits of the Ives decree, and at the same time foreclose the mortgage against the defendants who were not, but should have been, parties to that suit. It partakes of the character of both a foreclosure bill and a bill to execute the Ives decree. It contains the elements of both, by whatever name we may call it, which is of little consequence. It is an original bill against the defendants who were not parties to the Ives bill, and a supplemental bill as to the parties to that bill.

2d. The Gooding mortgage on lots 11 and 12, and the Penny mortgage on lot 13. These mortgages were on the premises when Firby conveyed to the Railroad Company; and it is insisted that, as the conveyance contains a covenant against incumbrances, they should be deducted from the amount due on the company's mortgage to Firby. They have not been paid by the Railway Company, or any of the appellants. *Non constat* that they will ever be called on to pay them, or that they ever will be paid by them. How then can they be set off? It is not necessary to inquire whether they are good and subsisting incumbrances or not, so long as they have not been paid by the appellants, and they do not show that they have been or are in danger of being damnified by them. The Penny mortgage it is true has been foreclosed, and lot 13 has been sold under the decree to Duffield, of whom it has been purchased by Brydges and Reynolds, for $1750. But it does not appear the Railway Company, or either of the appellants claiming under it, was a party to the foreclosure, or is bound by the foreclosure proceedings. Nor that either of the appellants has been or is threatened to be ousted of his title. Brydges and Reynolds purchased in their own right and not as trustees for the bond holders. Their purchase, therefore, was not and can not be treated

as payment of the mortgage by them as trustee mortgagees. It is not necessary to say what would be the effect of such facts on the rights of the parties if they appeared in the case. It will be time enough to dispose of that point when it arises. But we are of opinion the pleadings and proofs fail to make a case calling for a deduction from the amount due on the company's mortgage.

As to the form of the decree. It is said to be that of an ordinary foreclosure. We see nothing objectionable in this under the circumstances. When the Ives decree was entered the railway mortgage was not all due, and only a part of the debt which Firby was owing complainant, and to secure which the mortgage had been assigned to complainant. Further sums having become due on both, a new reference and a decree based on the commissioner's report became necessary.

The decree must be affirmed, with costs.

MARTIN CH. J. and CHRISTIANCY J. concurred.

CAMPBELL J. did not sit in the case.