## The Detroit and Milwaukee Railroad Company v. Stephen Griggs and others.

*Former suit when not a bar.*—Bill to foreclose a mortgage given for the purchase price of lands, which were conveyed to the mortgagor by deed covenanting against incumbrances. The mortgagor defended, claiming to have the amount of two mortgages, which were liens on the premises when conveyed to him, but which he had not yet paid, deducted. The deduction not being allowed, the mortgagor, after decree, paid off the prior mortgages, and then filed his bill to have the sums so paid set off and deducted from the amount of the decree. It was held, that the bill might be maintained, and that the adjudication in the first suit was not a bar to it.

*Covenant against incumbrances: Election of remedies.*—The ·purchaser in such case is not confined to his remedy upon the covenant, but is entitled, especially when the covenantor is insolvent, to have existing incumbrances deducted from his mortgage.

*Heard October 27th and 28th. Decided November 10th.*

Appeal in chancery from Wayne Circuit.

The complainants, by leave of the Court, filed their bill of complaint, setting forth:

That on May 23, 1854, the Detroit and Pontiac Railroad Company purchased lots eleven, twelve and thirteen, according to the recorded plat of the Lambert Beaubien farm, of Thomas Firby, for $17,000, and received therefor a deed with covenants against incumbrances and of title; that they paid Firby $1,000 down, and gave him a mortgage for $16,000, the balance of the purchase price, with interest at ten per cent; that the company then supposed the premises purchased were unincumbered, and relied upon Firby's representations that they were so; that subsequently the Detroit and Pontiac Railroad Company was, by due authority of law, consolidated with the Oakland and Ottowa Railroad Company, under the name of the Detroit and Milwaukee Railway Company, whereby said last company became entitled, among other things, to the said premises:

That Firby assigned said bond and mortgage to Caleb and Albert Ives, by an instrument absolute on its face, but really intended as collateral security for a sum of money he was then owing them, and afterwards, subject to their rights, assigned the same to Stephen Griggs, also as security, for a debt owing to him:

That on August 9, 1859, said Griggs filed his bill in said Court against the Detroit and Milwaukee Railway Company, Thomas Firby, Caleb and Albert Ives, John M. Forbes, John W. Brooks, Charles J. Brydges, Thomas Reynolds, Henry C. R. Beecher, John Owen, James V. Campbell, George F. Porter, Jared C. Warner, Frederick C. Gebhard, Erastus Corning and Matilda Firby (all of whom are also made parties to this bill), in which bill, after setting forth

the facts above recited, it was stated that, on March 24, 1858, said Caleb and Albert Ives filed their bill in said court against said Railway Company, and Brooks, Forbes and Griggs, to foreclose said mortgage, and decree was entered thereon February 8, 1859, by which it was adjudged that there was due and unpaid on the bond and mortgage $10,454 64, of which $6,808 01 was to be paid to C. & A. Ives, and $3,200 33 to said Griggs, with interest from January 10, 1859; and said decree also contained the usual order for the sale of the mortgaged premises; said bill also alleged that the Railway Company had made mortgages on said premises to Brydges, Reynolds and Beecher as trustees, and that they, after such decree, had in some way paid said C. & A. Ives for their interest in said bond and mortgage, and taken an assignment thereof, and that they did not now intend to proceed under the decree, and they denied the right of Griggs to do so; and it prayed that said decree might be declared in full force and effect, and be executed, or that a decree of foreclosure should be granted in the usual form; and it also prayed that Griggs might be subrogated to the rights of C. & A. Ives in a collateral mortgage executed to them by Firby to secure the same debt:

That answers were filed by a portion of the defendants to said Griggs bill; the answer of the Detroit and Milwaukee Railway Company, Brydges, Reynolds, Beecher, Owen, Campbell and Porter, admitting the facts set forth in the bill, save that it stated that the transfer of the Ives interest was to Brydges and Reynolds alone; and setting up as a defense that, when the Detroit and Pontiac Railroad Company purchased the premises of Firby, lot thirteen was subject to a mortgage executed to one Penny, for $2500 and interest, which was foreclosed, and the premises sold to Brydges and Reynolds for $1,750 or thereabouts; and that lots eleven and twelve were, as appeared of record, subject to a mortgage for $4000 and

interest, executed to one Wilder; that Firby was insolvent; and the answer claimed that the amount of these two mortgages should be deducted from the amount due on the Railroad Company's mortgage to Firby:

That decree was made on said Griggs bill, March 18, 1862, for a sale of the premises to satisfy the amount due on the Railroad Company's mortgage to Firby, not deducting therefrom the amount of the Penny and Wilder mortgages; and this decree was afterwards affirmed by the Supreme Court. [See 10 *Mich.* 117.]

The present bill further sets forth, that the present complainants, the Detroit and Milwaukee Railroad Company, have become the successors and entitled to all the rights of the said Detroit and Milwaukee Railway Company; that after decree in the Griggs suit, Brydges and Reynolds demanded of the Railroad Company possession of lot thirteen as purchasers thereof under the Penny mortgage, and that the company was compelled to and did, on June 28, 1862, purchase the same, and receive a conveyance from said Brydges and Reynolds, for $1,961 80; that George Jerome, who had become owner of the Wilder mortgage, also demanded payment of that, and on June 28, 1862, the company paid him $3,000, and took a discharge thereof.

And the bill therefore prays, that the decree in the Griggs suit should be reviewed and reversed, or that its execution should be enjoined, and a new decree entered, by which the amounts so paid by the company to release the premises from the Penny and Wilder mortgages should be allowed, and deducted from the amount due on the Railway Company's mortgage to Firby.

To this bill, Griggs demurred generally, and the Court below sustained the demurrer.

*D. C. Holbrook*, for defendant Griggs:

The law of equity is, that where a party has it in his power to make a defense, it must be made; nothing but

the want of knowledge of the defense, or new evidence, will allow any bill to be filed to review a decision.

In this case there is stated in the bill such facts as the *law declares* full notice and knowledge of the defense. The *bill* in *this* case *admits that before* Griggs filed his bill, the complainant, as an *actual fact*, had knowledge of those incumbrances outstanding. These matters would defeat a bill of review.

The only bill mentioned in the books allowed after a decree to affect its merits, is a bill of review; and a bill of review can only be filed to correct errors apparent in the pleadings and decree, or for new facts or evidence not known, and which *could not by diligence* be discovered *before* the decree was entered.

The following references show that this bill cannot be sustained: — *Adams Eq.* 397 *note* 2; *Story Eq. Pl.* §§ 412, 413, 414, 415; *Welford Eq. Pl.* 239; *Cooper Eq.* 91, 92; *Mitford*, 6 *Amer. ed., note* 2 *pp.* 101, 102; 16 *Ves.* 348; 6 *Madd.* 127; 5 *Whart.* 26; 7 *W. & S.* 454.

If the payment of those mortgages constituted any defense to reduce the amount due Firby, then it was the duty of the railroad company to have paid them, and set the fact up in its answer. The law authorized the company to pay these mortgages as well before as after the decree. And now the company asks to be relieved from its own neglect, and that the Court shall set aside and change its records and adjudications, as the pecuniary convenience of the company may fluctuate:—15 *Ohio*, 317; *Story Eq. Pl.* § 414; 1 *Dana*, 303; 2 *Dana*, 276; 1 *Met. Ky.* 226; *Saxton*, 413.

*Gray & O'Flynn* and *H. H. Emmons*, for complainant, cited the following authorities:

1. That the proper remedy has been adopted : — *Story Eq. Pl.* §§ 404, 415, 416, 388, 428; 2 *Barb. Ch. Pr.* 93, 94; 17 *Ves.* 178; 5 *Mason*, 313; 1 *Head*, 484; 4 *J. J.*

*Marsh.* 500; *Story Eq. Juris.* 887; 2 *Hill, Ch.* 152; 15
*Mass.* 207; 15 *Barb.* 515; 4 *Johns.* 191; 1 *Cow.* 42; 4
*Duer*, 148; 3 *Comst.* 216; 18 *How.* 421.

2. That the purchasing of the outstanding title and
payment of the mortgage, without waiting for actual evic-
tion, entitle the complainant to have the amount deducted
from the bond and mortgage given by Firby: — 13 *Johns.*
105; 2 *Wend.* 405; 7 *Johns.* 358; 4 *Mass.* 627; 16 *Johns.*
254; *Ibid.* 122; 17 *Wend.* 188; 20 *Pick.* 474; 9 *A. &
E.* 809; 8 *M. & W.* 829, *and n.* 833; 11 *A. & E.* 315;
2 *Allen*, 111; 5 *Blackf.* 102; 1 *Ind.* 187, 201; 6 *Barb.*
165; 3 *Zab.* 271; 21 *N. Y.* 191.

3. That the former decree is not a bar to the present
suit: — 3 *B. Monr.* 39; 9 *Paige*, 445; 6 *Wend.* 284; 3
*Sandf. Ch.* 117; 29 *Barb.* 243; 9 *S. & R.* 524; 1 *Yerg.*
457, 470; 8 *Pick.* 113; 17 *Mass.* 590; 4 *Mass.* 352; 4
*T. R.* 617; 10 *Me.* 170; 12 *Mass.* 304; 36 *Me.* 455; 26
*Miss.* 599; 13 *S. & M.* 445; 8 *Pick.* 550; 8 *Johns.* 442.

MANNING J. :

It is insisted that the relief sought by the present bill
should have been made a defense in the case of *Griggs
v. The Detroit and Milwaukee Railway Company, and
others*, reported in 10 *Mich.* 117. The Penny and Wilder
mortgages had not then been paid by complainant. Had
they been paid at that time by complainant, the objection
would be conclusive. Complainant insisted in its answer to
that suit, that it was entitled to have the amount of these
mortgages deducted from its mortgage to Firby, without
having first paid them.

That was the defense made in that suit. The Court
decided otherwise, and a decree was entered for the full
amount due on its mortgage to Firby. The present bill,
after setting forth the proceedings had in the former suit,
states the subsequent payment by complainant of the mort-
gages, and asks to have the amount so paid deducted from
the decree in the former suit.

The relief sought is in the nature of an equitable set off.

To a correct understanding of the present controversy, it is only necessary to state, that the Firby mortgage assigned to Griggs, was one given by the Detroit and Pontiac Railroad Company, now the Detroit and Milwaukee Railroad Company, to secure the purchase money of the mortgaged premises, on the conveyance thereof by Firby to the railroad company by a warranty deed, with a covenant against incumbrances. Griggs's rights are Firby's rights, no more, no less. He stands in Firby's shoes. And he insists the present bill can not be maintained, because it was complainant's duty, after having put in its answer in the former suit, to have filed a bill against the holders of the Penny and Wilder mortgages, making Griggs a party, in the nature of an original and cross bill, to have the first mortgage moneys due and payable on the Firby mortgage, applied in payment of the Penny and Wilder mortgages. Such a bill, we think, might have been maintained. We see no reason why it should not. But could not the same thing have been accomplished by Griggs, had he amended his bill, stating these outstanding mortgages, and making the holders thereof parties, and asking to have them paid from what was due on the Firby mortgage? We think it might. If correct in this, the company was no more in fault in not filing a bill to accomplish the object, than Griggs was in not amending his bill to effect the same thing. If either was under a greater obligation than the other, it was Griggs. It was for him, as the representative of Firby, to remove the alleged stumbling block that stood in the way to the payment of the Firby mortgage. If he is delayed in reaping the fruits of his suit by the present bill, is not the fault his own—one that he, as well as the company, might have obviated had the proper steps been taken by either pending the first suit?

It was Firby's duty to pay these mortgages, not the company's. He failing or omitting to do it, the company

had a right to pay them and set off the amount against what it was owing on its own mortgage.

The question of payment was not before us in the former suit. The question, as already stated, was whether the company could set off these prior mortgages without paying them. We decided it could not. It has since paid them, and thereby acquired a right that did not exist pending the first suit. And having the right now, it may file a bill to enforce it as it has done in the present case. Complainant might sue Firby on his covenant against incumbrances; but it is not confined to that remedy. It may file a bill to indemnify itself out of the purchase money it is still owing; more especially when the covenantor, as the bill alleges, is insolvent, and the remedy at law would be inadequate. The decree of the Circuit Court is reversed, with costs, and the demurrer of defendant is overruled, with leave to be given in the Circuit Court to defendant to answer, on paying the costs in that Court of overruling the demurrer.

MARTIN CH. J. and CHRISTIANCY J. concurred.

CAMPBELL J. did not sit in the case.