## HORACE FLANDERS vs. HENRY CHAMBERLAIN.

Courts of equity will not entertain a bill to compel offsets of unconnected, independent debts. Relief, by way of compelling set-offs, will only be granted where it appears that the accounts or claims of the parties are mutual *and dependent.*

*Cass Circuit, June,* 1871.

FLANDERS vs. CHAMBERLAIN.

The bill in this cause was filed December 2d, 1868. The complainant alleges, that on the 29th day of February, 1868, he was employed to farm the lands of the defendant; that to enable him to carry on the farm, the defendant sold him certain personal property, and became surety for him by signing notes given to other persons for personal property bought of them; that the amount of both liabilities so created was about $850 00; that to secure the defendant-the complainant executed to the defendant a chattel mortgage upon certain personal property. The complainant further alleges that the notes signed by the defendant as surety, have been paid by him; that the debts due the defendant, were as follows : One promissory note of date December, 1866, for $110; due October 1st, 1868, with interest at ten per cent—the consideration thereupon being a certain sorrel horse, mentioned in the mortgage' referred to. One note for $220 50, due, without interest, December 1st, 1868. and one note for $107 00, dated February, 1868, and due, without interest, January 1st, 1869, the consideration for which, was the wagon described in said mortgage. The complainant further alleges that on the 11th of November, 1868, there was due on the notes to the defendant, about the sum of $446 66; that on the same day the defendant was indebted to him upon an award, dated November 5th, 1868, $365 22, payable on the said 10th day of November; that to satisfy the chattel mortgage by the payment of said three notes, he, on the said 10th day of November, tendered the defendant the sum of $365 22, by offering to offset the same to that amount on complainant's indebtedness to him, and the further sum of $81 44, the balance then due him on said mortgage, by offering to him the sum of $90 00 in legal tender notes, requesting him to take balance due him out of said sum, which, he alleges, the defendant refused to accept, and that he thereupon sold to one Conden, the wagon mentioned in the mortgage. Nevertheless, the complainant claims that the defendant conspired with one Huntley, and one Burdick, and that they, on the 20th of November, 1868, took and carried away the wagon from the possession of said Conden, and one gray horse, one sorrel horse and one set of harness, some of the property described in said chattel mortgage, and secreted the same ; that on the 28th of November, 1868, Huntley gave the complainant notice of the sale of the property, a copy of which is annexed to the bill.—

The bill further sets forth that on the 30th of November, 1868, the defendant took possession of forty fat hogs, (parcel of fifty hogs mentioned and included in said mortgage,) by virtue of said mortgage, and that he held them with the intent of selling or otherwise disposing of them : that the value of the property taken by defendant was $815 00. The complainant alleges that the horses, harness, wagon, and his undivided interest in the forty fat hogs, were then free and clear from the lien of the chattel mortgage, and that the taking them from the town of Jefferson, where they then were, to the township of Howard, and there offering them for sale, was contrary to the terms of the mortgage, and was done for the purpose of oppressing and defrauding the complainant. The complainant prays that the Court decree that the lien of the mortgage upon the property so taken be declared satisfied and discharged, and that the defendant be ordered to return the property, and that he be enjoined from selling or disposing of the horses, harness, wagon, and the complainant's undivided half interest in the forty fat hogs. An injunction was thereupon granted, but on the coming in of the answer was dissolved.

The answer states the indebtedness of the complainant, admits the taking of the property by virtue of the mortgage, but denies that he was indebted to the complainant on an award to the amount of $365 22, on the 10th day of November, 1868. The answer further states that the defendant is worth at least ten thousand dollars.

*Daniel Blackman* and *Edward Bacon*, for complainant, in support of the position that this is a proper case for the exercise of equity jurisdiction, say :

"There is no doubt that relief exclusively equitable is prayed for by the bill, to wit : the extinguishment or cancellation of the mortgage. Cancelling writings, is that from which Chancery derived its name.

" The tender was after default in the mortgage, when by the cases cited on the defence, the only relief was in equity. See cases cited by defendant's counsel, *Tannahill vs. Tuttle*, 3 *Gibbs*, p. 110 ; *Van Brunt vs. Wakelee*, 11 *Mich. Rep.*, 177 ; *Story's Eq. Pr.*, Sec. 1031.

" The whole nature of the case is such as shows oppression equal to fraud, from which relief is sought.

" There is no demurrer or claim of advantage equal to demurrer,

and although it should be admitted that the remedy at law is adequate and plain, the defendant is rightly subject to the decree of this Court. This is plainly asserted by the case cited by the defendant's counsel—*Bennet vs. Nichols*, 12 *Mich.*, p. 22. See also *Underhill vs. Van Cortlandt*, 2 *John. Ch. R.*, 339 ; *Le Roy vs. Platt*, 4 *Paige*, 81 ; *Livingston vs. Livingston*, 4 *John. Ch. R.*, p. 290.

" It is competent for this Court where it has acquired jurisdiction for the purpose of granting an injunction, to retain the suit for the purpose of giving damages to the complainant. *Brown vs. Gardner, Harrington Ch. R.*, p. 291. The Court acquiring jurisdiction for one object, may, even though the principal relief be refused, retain jurisdiction to give damages under the general prayer. This is expressly decided in *Carrol vs. Reed, Walk. Ch. Rep.*, (*Mich.*) p. 381.

" The Court having obtained jurisdiction for one purpose may retain it to give full relief and might decree a return of the property mentioned in the chattel mortgage to the complainant's possession. Expressly decided in *Whipple vs. Ferroo et. al.*, 3 *Gibbs*, 437, and if possession could be decreed or damages, as aforesaid, of course, the property being long ago marketed, the defendant can be decreed to account, no prayer for special relief being necessary in any case. 1 *Barb. Ch. Practice, p.* 37.

" The tender was sufficient in equity, if under all the circumstan of the case the defendant ought to have accepted of it, or failed to base his alleged refusal of acceptance on any valid reason. *Bellinger vs. Kitts*, 6 *B wrb. Sup. C. Rep.*, 273 ; *Stephenson vs. Maxwell*, 2 *Coms.*, 415."

" In 12 *Mich.*, 45, we have a case where complainant acquired his rights after a foreclosure decree, and filed his bill to set off payments against. If we substitute forfeiture for decree, our and this case is strikingly similar. It was the legal duty of Griggs to have paid the incumbrances. He did not do it; complainant did. See p. 51, at bottom.

" The grounds for jurisdiction were two : (p. 52.)

" Insolvency, which alone is inadequate. *Hale vs. Holmes*, 8 *Mich.*, 37.

" 2. Inadequacy of the legal remedy. We have no legal remedy.

" In *Lockwood vs. Beckwith*, 6 *Mich* , 168, and *Brackett vs. Sears,* 15 *Mich.*, 244, we have the principles of equitable set-off.— From these cases it appears :

" 1.   That when the Court has  jurisdiction of the case it will enforce a mere  legal set-off as a foreclosure case.  See 10 *Mich* , 117.  The incumbrances were not set off, because not paid.  In 12 *Mich.*, 45, they had  been paid, thus showing they would have been a good set-off if paid in the first case.

" No equitable grounds are required where the  Court for other reasons have acquired jurisdiction.

" 2    Where the equity attaches to the demand, and not to the person.  6 *Mich.*, 175 ; where there is  mutual  credit, as when Flanders owed Chamberlain and worked for him without asking payment, and without an offer by C. of payment.  F. swears he supposed he was paying off the debt by his work.  C. does not  deny there was acknowledge of this credit being the means of discharging the debt on the notes.  He swears there was no contract to set off.

" In 15 *Mich.*, it is said from the nature of the dealings, and the course of their accounts, it was  evidently considered by the parties the accounts were *dependent*.

" It may be said these are cases of defenses.  The case in 12 *Mich.*, was of a bill filed.  That which is a good equitable defense is good ground for a bill generally.

The reason why a bill for a mere legal set off is not sustainable, is that there is an adequate and full remedy in a suit at law.  Plaintiff can sue or wait till he is sued.  But against a sale or chattel mortgage there is no such remedy."

*Frankl . Muzzy* and *H. H. Coolidge & Son*, for the  defendant, insist :

" 1.   This is not a bill to redeem.  The essentials of such a bill are wholly wanting.  *Beck vs. Frost*, 18 *John. R.*, pages 544, 559, 570 |

" It does not  pretend to be a bill to redeem, nor of any such nature.  It avers that by the  tender, Chamberlain's lien under the mortgage was destroyed.  He asks the Court to so say and to order the return of the property.

" 2.   The bill makes out no case of equitable jurisdiction.

" The bill shows there  had  been a forfeiture in the  payment of

the $110 note. This note was due October 1st, 1868. The tender was made November 10th, 1868, and Chamberlain had good right to reduce the property to possession.

" The complainant shows by his bill that he had a perfect legal remedy. If by the tender the lien was destroyed, the property became Flanders'. There was a perfect remedy by replevin or trover.

" The statutes of set-off were made to give defendants the privilege of setting off their claims against the plaintiff's claims. But here the complainant seeks to compel the defendant to set off, and this he does without showing the danger of any loss, any irreparable mischief or injury. He does not aver that the defendant is insolvent.

" Chamberlain's claim is disputed. The liability of Chamberlain on the award is uncertain. A court of law should settle that question. If the award is valid, then Flanders' remedy is complete and adequate at law.

" In a suit at law, Chamberlain would be under no obligations to set off his claims against it. How can this Court compel him to do it?

" Courts of equity do not take jurisdiction to compel offsets of unconnected debts, generally. There must be some special grounds for relief, such as mutual credits on the faith of the debts. *Dale vs. Irwin's Ex's,* 2 *How. U. S.,* 146.

" No such mutual credits are alleged in the bill. There is no such pretence there set out. There is nothing peculiar about it.— It is a naked claim on the one part and on the other.

" Where there are mutual demands, a court of equity will sometimes interpose to set off one demand against the other; but if the demand sought to be set off is not of a nature to give a court of equity jurisdiction, there must be some connection between the demands to justify the jurisdiction. *Pierson vs. Mieux,* 3 *A. K. Marsh,* 933.

" Neither of the demands in this case are of such a nature as to give the Court jurisdiction. One is of simple promissory notes— the other is an award.

" Before the alleged tender, Chamberlain had become the absolute owner of the mortgaged property. *Patchen vs. Price,* 12 *Wend.,* 61 ; *Brown vs. Bennett,* 8 *John.,* 96 ; 40 *Barbour,* 179 ; *Thurber vs. Jewett,* 3 *Gibbs,* 298.

" *Van Brunt vs. Baker*, 11 *Mich.*, 177, does not change the doctrine."

*By the Court*, BROWN, J.—The Court in delivering its opinion on the motion to dissolve the injunction, assigned as reasons why the motion should be granted:

1. That the complainant covenanted in the mortgage to pay the debt mentioned therein. The law implies that it is to be paid in money, and this was the plain intention of the parties.

2. That though in suits which are actually pending in a court of equity the defendant may offset a claim or demand, yet where persons have mutual demands or claims against each other, and one refuse to accept a tender of offset, equity will not interfere to enforce such tender and demand of offset.

If these views of the case are correct, it is clear that the bill should be dismissed, for there is nothing in the proofs to take the case out of and beyond the operation of the rules of equity indicated by the Court.

I shall therefore consider, first, the views of the Court as announced in the decision upon the demurrer.

By the provisions of § 3480, *C. L.*, it is provided that in suits in equity " for the payment or recovery of money, set-offs shall be allowed in the same manner and with the like effect as in actions at law."

The complainant insists that the object of the bill is " to substitute for the legal contract, the mortgage, or true state of affairs between the parties;" while the defendant insists that the bill seeks to " set off one legal debt against another legal debt," and that a court of equity cannot be properly called upon for this purpose.

The case of *D. & M. R. R. Co. vs. Gregg*, 12 *Mich.*, 45, is claimed by the defendant to be somewhat analogous to the case at bar. In that case the complainant had purchased real estate and gave back a mortgage to secure the purchase money. The deed contained covenants against incumbrances. At the time of the conveyance there were two mortgages upon the premises. Proceedings were instituted to foreclose the mortgage given by the railroad company. The company, in view of the covenants in their deed, sought to have the amounts of the former mortgages deducted from their indebtedness. This claim was disallowed, and a decree entered

against the company. After the entry ot this decree the company paid off the prior mortgages, and then filed a bill to have the sums so paid, set off and deducted from the amount of the decree. The Court entertained the bill and granted the relief prayed for. It is true that it appeared in this case that the grantor was insolvent, which, under the circumstances, would be ground for the interference of equity; but an examination of the case shows that the Court did not put it upon that ground, but only referred to the fact of insolvency as an *additional* reason for the exercise of equity jurisdiction. The ground for the decision was, simply, that the railroad company might indemnify itself out of the purchase money it was still owing, through the intervention of equity, instead of bringing a suit at law against the grantor on his covenant against incumbrances. The mortgages were a lien upon the land, and if not paid would, by foreclosure, operate to divest the railroad company of title, and take from it a title which the grantor had covenanted to defend. The agreement of the parties was, that the grantee should have an unincumbered title. To aid in carrying out this agreement, a court of equity might properly exercise jurisdiction. If no conveyance had been made, but simply a contract to convey, equity would compel a specific performance of the contract. As equity will interpose to enforce agreements, so it will give relief where a party, to protect his own rights, does that which another in good conscience was bound to do for him.

Where a party executes an ordinary warranty deed of lands and takes a mortgage back, to secure some portion of the purchase money, the covenants in the deed are, in one sense, the consideration for the money paid, and for the mortgage and accompanying obligations. Hence if it turns out that there is a prior incumbrance on the land, and the purchaser pays the same, the consideration as between grantor and grantee is affected to the extent of such incumbrance. To illustrate: The value of the premises, free from all incumbrance is one thousand dollars. Upon the representations of the grantor that the premises were unincumbered, the grantee undertakes to pay therefor one thousand dollars. It subsequently appears that there was an incumbrance of five hundred dollars upon the premises. It is the business of the grantor to procure a discharge of this in-

2

cumbrance. If he does not, there is, to that extent, a failure of consideration as between him and his grantee, and if the grantee is put to expense on that account, it is quite clear that when the grantor seeks to recover upon his mortgage, a court of equity would say, " You procured this mortgage upon certain representations. Those representations were not true. It has cost the mortgagor five hundred dollars to procure such an interest as you covenanted to convey to him. You shall now make him good by endorsing upon your decree that sum."

The reason why, in the case in 12 *Michigan*, the complainant was allowed to file its bill to procure a set-off against the decree, was, that it was not, until then, in a condition to insist upon such set-off, not having paid off the prior mortgages until after the entry of the decree referred to. It was, as I infer from the language of the second paragraph, at page 46, of that case, upon a showing of these facts by petition, that an order was entered permitting the complainant who had, upon the proceeding to foreclose its mortgage, endeavored to have the prior mortgage set off and deducted from its mortgage, to file its bill.

In the case at bar, I am unable to discover any relation, connection or dependence between the accounts and claims of the parties. In the absence of such relation or dependence, I am at a loss to perceive how a court of equity can be called upon to interfere. " Courts of equity do not take jurisdiction to compel offsets of unconnected debts " The bill does not allege that the debts and credits were mutual and dependent, nor does the proof show such to be the case. With this view, it is unnecessary to consider the other questions involved.

Let an order be entered dismissing the bill.